UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No.** |
| | ) | **25-10345-FDS** |
| **ELIEZER RIVERA,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE ORDER

**SAYLOR, J.**

Defendant Eliezer Rivera is charged with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). The evidence on which the indictment is based was recovered during a traffic stop in New Bedford, Massachusetts.

The magistrate judge denied the government's motion for pretrial detention and ordered defendant released with conditions. The government appealed pursuant to 18 U.S.C. § 3145(a), and the Court stayed execution of the order of release pending its decision. After careful consideration of the order of the magistrate judge, the memoranda submitted by the parties, the transcript of the pretrial detention hearing, and the evidentiary record, the government's motion for revocation of the pretrial release order as to defendant will be granted.

**I.    Background**

    **A.    Factual Background**

On June 18, 2025, police officers in New Bedford stopped Eliezer Rivera for texting

while driving. While speaking with Rivera, an officer observed a bag of marijuana that he believed exceeded the legal limit. The officer ordered him out of the vehicle and conducted a search of his person. The officer found a plastic bag of suspected crack cocaine, later found to be approximately 36 grams, along with five individually-packaged plastic bags each containing 1 gram of suspected crack cocaine.

The officers then searched the vehicle. They found a digital scale and packaging materials inside. In the center console they found a handgun loaded with twelve rounds of ammunition, with one chambered. Rivera told officers that he did not have his license to carry with him. Later investigation revealed that he does not, in fact, possess such a license.

B.   **Procedural Background**

On August 21, 2025, a grand jury returned an indictment charging defendant with possession with intent to distribute cocaine in violation of 8 U.S.C. §§ 841(a)(1) and (b)(1)(C) and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Defendant made his initial appearance in federal court on August 26, 2025. The government moved for pretrial detention. The magistrate judge issued an order of detention pursuant to *United States v. King*, 818 F.2d 112, 115 n.3 (1st Cir. 1978), and continued the detention hearing, as defendant was in state custody. State charges were dismissed on September 5, 2025, and defendant was transferred to federal custody.

The magistrate judge held a detention hearing on September 9, 2025. At the hearing, the government called one witness and sought to introduce twelve exhibits, eight of which were admitted. Two of eight admitted exhibits were police reports from December 2013 and 2014, which were admitted without objection. Defense counsel objected to the admission of four

additional New Bedford police reports (from July 2013, 2017, 2023, and 2024) on the grounds that one report did not result in charges against defendant; that the charges stemming from the other reports were dismissed; and that one of the reports involved an incident in 2013, more than ten years ago. The magistrate judge sustained the objection and did not admit any of the four reports, in whole or in part.

On September 29, 2025, in a written opinion, the magistrate judge ordered defendant's release on conditions to be set at a future hearing. The next day, the government filed an emergency motion seeking a stay and review of the release order pursuant to 18 U.S.C. § 3145(a). In its motion, the government renewed its request that this Court consider the four police reports that were not admitted in evidence. The magistrate judge held a bail review hearing and ordered defendant released upon the condition of home detention with location monitoring. The same day, this Court stayed the order of release pending its decision on the government's motion.

On October 14, 2025, the Court heard oral argument as to the government's motion. The parties did not seek to introduce new evidence, except for the four exhibits the government had sought to introduce at the detention hearing.

## II.    Standard of Review

The District Court has jurisdiction to review an order of release upon motion of the government. 18 U.S.C. § 3145(a). Upon that motion, the court must review legal conclusions and contested findings supporting release *de novo*. *United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990).

A judicial officer may order a defendant detained pending trial if the government can establish (1) by clear and convincing evidence that a defendant is a danger to the community or

(2) by a preponderance of the evidence that a defendant poses a serious risk of flight.  18 U.S.C. § 3142(f); *see United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991); *see also United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991).  If the government meets that initial burden, a defendant may be detained only if the judicial officer determines that "no condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person in the community."  18 U.S.C. § 3142(e).  In making that determination, the court must consider the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the defendant, and the nature and seriousness of the danger posed by their release.  18 U.S.C. § 3142(g).

The statute establishes a rebuttable presumption of dangerousness and risk of flight if there is probable cause the person committed a Controlled Substances Act offense with a maximum term of imprisonment of ten years or more, or that the person carried a firearm during or in relation to any crime of violence or drug trafficking.  18 U.S.C. § 3142(e)(3)(A), (B).  Defendant has the burden of production to produce "some evidence" to rebut the presumption.  *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by*, *United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).  Even then, the presumption is not "erase[d]"—it is not a "bursting bubble."  *Id.* at 383.  Rather, "[t]he burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight."  *Dillon*, 938 F.2d at 1416.

### III.   Analysis

#### A.   Admission of Police Reports

At the detention hearing before the magistrate judge, the government sought without success to introduce four police reports that described conduct by defendant that either was not

charged or was charged but dismissed. The government has renewed that request on appeal.

As a general matter, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(e). The critical issue is not technical admissibility, but reliability. The judge may "rely upon investigatory descriptions of evidence (and similar hearsay) where the judicial officer reasonably concludes that those descriptions, reports, and similar evidence, in the particular circumstances of the hearing, are reliable." *United States v. Acevedo-Ramos*, 755 F.2d 203, 207 (1st Cir. 1985). The judge may therefore consider hearsay evidence, including police reports, as long as that evidence is "sufficiently reliable." *Id.* at 208.

Defendant contends that the government has not provided any extrinsic evidence, such as officer testimony, to show that the reports are reliable. In addition, he contends, the absence of charges or convictions arising out of the conduct described "calls into question the reliability of the statements included in the police reports." (Def.'s Mem. Opp'n Gov't's Mot. Revoke Release Order at 7, Dkt. No. 30).

The government need not offer corroborating officer testimony to rely on police reports at a detention hearing. *See, e.g.*, *United States v. Pasciuti*, 1992 WL 51482 (1st Cir. Mar. 19, 1992) (per curiam) (affirming the district court's admission of police reports without officer testimony because defendant failed to undermine the reports' reliability). Detention hearings are "informal affairs, not substitutes for trial or even for discovery." *Acevedo-Ramos*, 755 F.2d at 206. The court must balance the "competing demands of speed and of reliability" by requiring the "production of the underlying evidence or evidentiary sources *where their accuracy is in question*." *Id.* (emphasis added).

5

Like most police reports, the ones at issue here include personal observations made by officers, statements by the (now) defendant, and statements by witnesses. The trustworthiness of each of those types of evidence is different, and is therefore subject to a somewhat different analysis.

To begin, the Court sees no reason to reject all of the police reports in their entirety because none of the conduct described resulted in a criminal conviction. Defendant contends that the charges stemming from the reports "could have been dismissed for a variety of reasons," including the possibility that a prosecutor evaluating the case determined information in the reports was unreliable. (Tr. Detention Hr'g 14:10-14, Dkt. No. 27). That is certainly a possibility. But defendant has not presented any evidence, such as a transcript from a court proceeding or a statement by a prosecutor, to bolster that contention. Nor has defendant submitted other evidence, such as inconsistencies in statements or officer disciplinary records, tending to suggest that the reports contain false or misleading information or are otherwise unreliable. Police reports may, of course, be inaccurate—either deliberately or negligently—but they do have indicia of reliability, at least in the absence of countervailing evidence; for example, they are subject to scrutiny in the adjudication process and officers who make false reports are subject to criminal penalties. *See* 18 U.S.C. § 1519.

In short—and notwithstanding the fact that no criminal convictions resulted from the conduct described in the reports—the Court cannot conclude that all of the information in all four reports is inherently unreliable and should therefore be rejected out of hand. It does not follow, however, that all of the information in those reports is inherently reliable and should therefore be accepted at face value.

The first set of issues concerns the officers' first-hand observations—that is, what the officers themselves saw. Such information is more likely to be accurate than the recounting of statements or conversations, as there is no issue of misquoting or misunderstanding another person's words. Indeed, defendant does not raise specific concerns about the reliability of that information. Thus, the Court sees no reason not to credit the statement in the 2024 report that officers found a backpack with a loaded handgun in the backseat of an automobile that defendant was driving. Similarly, the Court will credit the observations of the police (1) in 2023, when they found defendant shot in the neck in his girlfriend's apartment, and found a loaded handgun and drugs in a backpack at the scene (that his girlfriend was attempting to remove), and (2) in 2013, when they found drugs and a knife in a vehicle driven by defendant and a folding knife with brass knuckles on his person.

The next issue concerns a statement made by defendant himself—in particular, the 2024 report indicating that he told the police that the backpack containing the gun belonged to him. In the absence of countervailing evidence—and even though he retracted it once the gun was found—that statement appears to be sufficiently reliable for the Court to accept it for its truth. Among other things, it would be admissible under the Federal Rules of Evidence; it is not hearsay, *see* Fed. R. Evid. § 801(d)(2), and it exposed the defendant to possible criminal charges, *see* Fed. R. Evid. § 804(b)(3). The statement was also corroborated by the fact that the backpack contained a pill bottle with his name on the label. (Emergency Mot. Stay and Review Release Order ["Emergency Mot."] Ex. 2). If defendant contends that the statement was taken out of context or fabricated, or that he was misquoted, he had an opportunity to challenge it, by affidavit or otherwise, and he did not do so.

7

Police reports of statements made by third-party witnesses, however, are inherently less trustworthy, and therefore should be subjected to closer scrutiny. Among other things, such statements would not normally be admissible unless they fit within a hearsay exception; may themselves contain another level of hearsay; or may be problematic for other reasons. For example, the statement of the defendant's girlfriend to police in 2023 that anything found in the backpack was not hers, and that the gun found in it "maybe" belonged to the defendant, is self-serving. (Emergency Mot. Ex. 1). It thus cannot reasonably be treated as trustworthy in the absence of corroborating evidence. And to the extent that the four reports contain other such third-party statements, they are either irrelevant or insufficiently trustworthy, and will not be considered.

In short, under the circumstances presented here, the Court will admit into the evidentiary record those portions of the police reports that contain (1) the personal observations of police officers, as set forth in the 2023 and 2024 reports, and (2) the statement of defendant to the police in 2024 that the backpack found in the vehicle belonged to him. (Emergency Mot. Ex. 1, 2).[1] It will not, however, consider any statements set forth in those reports that are attributable to parties other than the defendant.

B.     **Applicable Presumption**

Defendant is charged with 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), which carries a maximum sentence of more than ten years, as well as 18 U.S.C. § 924(c)(1)(A)(i). The presumption of pretrial detention set forth in 18 U.S.C. § 3142(e)(3)(A) and § 3142(e)(3)(B) therefore applies. Defendant, however, has presented "some evidence" to rebut the presumption

---

[1] The government also seeks to admit the July 2013 and 2017 reports that describe domestic-assault episodes whose resulting charges were ultimately dismissed. (Emergency Mot. Ex. 3, 4). Because those reports do not contain any statement by defendant or any relevant police observations, they will not be admitted.

8

of dangerousness and risk of flight. *Jessup*, 757 F.2d at 384. In 2024 defendant was released on bail for a state case. He was subject to home detention with location monitoring for six months, during which time he complied with his conditions of release. Defendant's compliance is some evidence that there are conditions that reasonably assure the safety of the community and his appearance.

### C.     Danger to the Community

The Court next considers whether the government has established dangerousness by clear and convincing evidence, following the factors set forth in 18 U.S.C. § 3142(g). Because the Court finds that the government has met its burden and no combination of conditions of release can reasonably assure the safety of the community, it does not address the question of risk of flight.

#### 1.     Nature and Circumstances of the Offense

The Court first considers the nature and circumstances of the offense. *See* 18 U.S.C. § 3142(g)(1). The alleged crimes—possession with intent to distribute cocaine and carrying a firearm during and in relation to a drug trafficking offense—are serious. The charges carry a mandatory minimum prison sentence of five years. 18 U.S.C. § 924(c)(1)(A)(i). The gun was also found loaded with twelve rounds of ammunition, including one chambered ready to fire. *See* Massachusetts Gen. L. Ch. 140, §§ 121, 131M (criminalizing the possession of a "large capacity feeding device" capable of hold more than ten rounds of ammunition). Defendant does not possess, and never has possessed, a license to carry a firearm. *See* Massachusetts Gen. L. Ch. 269, § 10(a) (establishing an eighteen-month mandatory minimum for possession of a firearm without a license). That factor strongly favors detention.

#### 2.     Weight of the Evidence

The weight of the evidence against the defendant is also substantial. *See* 18 U.S.C. § 3142(g)(2). He was the operator and sole occupant of a vehicle that contained a loaded gun in the center console. Crack cocaine was also found on his person, along with individually-packaged one gram bags. That factor also favors detention.

### 3.     **Defendant's History and Characteristics**

Next, the Court considers the history and characteristics of defendant. *See* 18 U.S.C. § 3142(g)(3). In so doing, the Court takes into consideration the defendant's apparently close family ties, as well as his ability to reside with his mother while on home confinement. The Court also acknowledges his medical condition and his stated intention to receive follow-up care in the community.

The Court also looks to defendant's "past conduct" and "criminal history." 18 U.S.C. § 3142(g)(3)(A). Without question, he has a pattern of concerning conduct.

According to the December 2013 police report, after a traffic stop, officers found 40 plastic twists of crack cocaine, 13 bags of marijuana, and a knife in a vehicle driven by defendant, in addition to a folding knife with brass knuckles attached to the handle on his person. (Detention Hr'g Ex. 8).[2] That case was continued without a finding in state court, which represents an admission by defendant to the conduct charged. (Emergency Mot. at 2). The fact that the episode occurred more than a decade ago certainly undercuts its weight to a substantial degree, but it does not render the evidence irrelevant.

---

[2] The December 2013 report was admitted without objection in the initial detention hearing. (Tr. Detention Hr'g 6:4-14).

According to the 2014 police report, officers responded to a reported altercation at a festival. (Detention Hr'g Ex. 9).[3] An individual involved in the altercation told officers that defendant had pulled a knife. The Court will not consider that hearsay statement, and again, the age of the report undercuts its weight in any event.

According to the 2023 police report, officers reporting to an emergency call found defendant shot in the neck in his girlfriend's apartment. (Emergency Mot. Ex. 1). Her three children were in the apartment at the time. She later tried to leave the apartment with a backpack that contained a loaded handgun and drugs. (*Id.*). Outside the apartment, officers also found two groups of shell casings approximately 25 feet apart, which they viewed as indicative of two groups shooting towards each other. (*Id.*). Defendant was not charged in connection with that episode. (Emergency Mot. at 3). Again, that evidence has limited evidentiary weight, as there is no direct evidence defendant himself engaged in criminal conduct. Nonetheless, the Court will consider the officers' observations, including defendant's proximity to firearms and illegal drugs, as part of the evidentiary record.

According to the 2024 police report, police officers conducted a traffic stop on a car driven by defendant. (Emergency Mot. Ex. 2). Defendant initially told the officers that a backpack in the rear seat belonged to him. The backpack contained a loaded revolver and three plastic bags of crack cocaine. (*Id.*). It also contained a prescription pill bottle with his name. (*Id.*). Defendant disclaimed ownership of the backpack once the officer found the revolver. (*Id.*). It is true that the resulting state-court charges were dismissed. (Emergency Mot. at 4). Nonetheless, for the reasons indicated above, the Court will credit both the police observations and their report of defendant's statements.

---

[3] The 2014 report was admitted without objection in the initial detention hearing. There is no evidence in the record that it resulted in charges against defendant. (Tr. Detention Hr'g 6:4-14).

Defendant's past conduct thus includes both (1) a 2024 admission of the unlawful possession of a loaded handgun and illegal drugs (although later retracted) and (2) a pattern of possession of, or proximity to, drugs and weapons going back to 2013. While the defendant's family and community connections do carry weight in the analysis, those factors were apparently present in 2024 as well, and were not sufficient to deter defendant from engaging in criminal conduct. Overall, defendant's history and characteristics favor detention.

### 4. Seriousness of Danger

Finally, the Court considers the danger to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g)(4). In so doing, the Court bears in mind the presumption of dangerousness for defendants charged with a drug offense carrying a sentence of more than ten years and for defendants carrying a firearm during or in relation with a drug trafficking offense. That factor "encompass[es] 'the risk that a defendant will continue to engage in drug trafficking.'" *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) (quoting 3B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 766 (4th ed. 2013)).

Again, the evidence indicates that in a span of two years, defendant was found by police in possession of or in close proximity to a loaded handgun three times. It also suggests a possible pattern of drug possession or trafficking. That final factor also weighs substantially in favor of detention.

*** 

In sum, all four factors favor detention. Under the circumstances, the Court finds that the government had met its burden by clear and convincing evidence that defendant would pose a danger to the community if released.

### D. Combination of Conditions

Defendant contends that even if the Court finds he poses a danger to the community, there are conditions that could sufficiently alleviate that risk to permit his release. Specifically, he asks the Court to adopt the magistrate judge's conditions of home detention with location monitoring at his mother's house.

In making her determination, the magistrate judge did not consider any of the information in the four police reports that were not admitted into the evidentiary record. Particularly troubling in these reports is defendant's repeated possession of loaded handguns with drugs despite encounters with police. He apparently lived with his mother during the more recent incidents, which suggests her presence does not prevent his unlawful conduct.

The Court also notes that while defendant was on location monitoring without issue from October 2024 to March 2025, the present offense occurred on June 18, 2025. While defendant may have been compliant with conditions of release, he is alleged to have committed another crime shortly thereafter coming off location monitoring. That reoccurring conduct—despite numerous encounters with the criminal justice system—supports a finding of detention.

In short, the Court is not convinced that there is a condition or combination of conditions of release that would reasonably assure the safety of other persons in the community. Accordingly, it will grant government's motion, revoke the order of release pursuant to 18 U.S.C. § 3145(a), and order that the defendant be detained pending trial.

## IV. Conclusion

For the foregoing reasons, government's motion for review and revocation of the pretrial release order (Dkt. No. 19) is GRANTED. The Court hereby ORDERS that defendant remain detained pending trial of this matter.

**So Ordered.**

Dated:  October 31, 2025

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge