**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No.** |
| | ) | **25-10345-FDS** |
| **ELIEZER RIVERA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER ON MOTION TO SUPPRESS**

**SAYLOR, J.**

Defendant Eliezer Rivera is charged with possession with intent to distribute cocaine in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and carrying a firearm during and in relation to

a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i).  He has moved to suppress

evidence seized by local law enforcement during a traffic stop in New Bedford, Massachusetts.

Defendant alleges that (1) the initial vehicle stop, (2) the scope of the stop, (3) the search of his

person, and (4) the search of his vehicle violated his Fourth Amendment rights.  The Court held

an evidentiary hearing on June 11, 2026.  For the following reasons, the motion will be denied.

**I.      Background**

**A.      Factual Background[1]**

On the afternoon of June 18, 2025, Detective Eric Boulay and Detective Matthew

Couture were sitting in an unmarked cruiser outside Parker Elementary School in New Bedford,

---

[1] The Court finds the following facts based upon the testimony of Detective Eric Boulay and Detective Matthew Couture of the New Bedford Police Department given at the June 11, 2026 evidentiary hearing (Dkt. No. 74), as well as the exhibits submitted by the parties, including the arrest report (Dkt. No. 64-1, at 1-10), the detectives' body camera footage, the defendant's affidavit (Dkt. No. 64-1, at 12-13), and photographs of the seized evidence.

Massachusetts.  The cruiser was facing southeast, toward the intersection of Parker and County Street.

Around 3:15 p.m., both detectives observed a silver or gray Nissan Rogue traveling east along Parker Street toward County Street.  The Nissan was approximately 45 to 75 feet away from the cruiser across a grassy area and one lane of traffic.[2]  The driver's side window (the window facing the cruiser) was down.  In addition, the vehicle was slowing down to stop at the intersection.

Both detectives observed the driver, who was later identified to be Eliezer Rivera, holding his cellphone up to his face.  Detective Boulay testified that Rivera was manipulating the phone in a texting motion, although he was not able to see the device's screen.

The detectives then pulled behind the Nissan and conducted a traffic stop.  While doing so, they ran the plates and discovered that the car was a rental.  The subsequent interaction was captured on a body camera.

Detective Couture got out of the cruiser and approached the driver's side of the Nissan. He informed Rivera that he had been stopped for being on his phone and asked for his license and the rental agreement for the vehicle.  As Rivera searched for the rental agreement, Detective Couture looked through the rear window into the backseat.  He testified that he observed a vacuum-sealed plastic bag containing marijuana in the rear of the vehicle.[3]  Based on his experience of having seen marijuana "thousands" of times and more than two ounces of

---

[2] Detective Boulay testified that the Nissan Rogue was 15 to 20 yards away, while Detective Couture testified it was 50 to 75 feet away.

[3] Defendant initially asserted that the bag was opaque and its contents would not have been visible to Detective Couture.  (Mot. to Suppress 13, Dkt. No. 64).  He later conceded that one side of the bag was transparent. (Reply 2 n.2, Dkt. No. 71).

marijuana "many" times, he believed that the plastic bag contained more than two ounces of marijuana.

Detective Couture then asked Rivera if he had "any other weed than what is in the back" and "how much weed d[id] [Rivera] think" there was in the bag.  Rivera responded by grabbing the plastic bag from the back seat and showing it to the detective.  He stated that there was "maybe like 2 ounces that's it."  Detective Couture was then able to get a better look at the bag. He testified that he observed multiple packaged sandwich bags within the larger plastic bag.  He believed that the packaging indicated that the marijuana was packaged for distribution.  At that time, he concluded that there was between two and a half ounces to a quarter pound of marijuana in the larger plastic bag.

Detective Couture then asked Rivera to step out of the vehicle.  Rivera placed the plastic bag of marijuana into the glove compartment and stepped out.

The body camera footage shows that as Rivera stepped out the vehicle, he reached his hand into the right front pocket of his pants.  It appears he was attempting to place his wallet into his pocket.  As he was doing so, Detective Couture reached into the pocket with his left hand while simultaneously using his right hand to remove Rivera's hand from the pocket.  The detective felt around the pocket for a brief moment.  He then removed his hand from Rivera's pocket and placed Rivera in handcuffs.  After doing so, he reached back into the pocket and removed several items that were later determined to be a plastic bag and plastic tube containing crack cocaine.

After Detective Couture placed Rivera in handcuffs, Detective Boulay approached the driver's side door of the car.  He then searched the passenger compartment.  In the center console he found an additional sandwich bag of marijuana, a tin containing marijuana, a digital scale, and

3

a loaded 9-millimeter handgun.  When asked about whether he had a license to carry the firearm,

Rivera stated that he did not have it on him.  Detective Couture later performed a full search of

the vehicle.

### B.      **Procedural Background**

Defendant was initially charged in state court with possession with intent to distribute a

Class D substance, cocaine trafficking, various crimes related to possession of the firearm, and a

civil violation of using an electronic device while operating a motor vehicle.  (Arrest Report,

Dkt. No. 64-1, at 3).

On August 21, 2025, a grand jury returned a federal indictment charging defendant with

possession with intent to distribute cocaine in violation of 8 U.S.C. §§ 841(a)(1) and (b)(1)(C)

and carrying a firearm during and in relation to a drug trafficking offense in violation of 18

U.S.C. § 924(c)(1)(A)(i).  (Dkt. No. 1).

Defendant made his initial appearance in federal court on August 26, 2025.  The

government moved for pretrial detention.  The magistrate judge issued an order of detention

pursuant to *United States v. King*, 818 F.2d 112, 115 n.3 (1st Cir. 1978), and continued the

detention hearing, as defendant was in state custody.  State charges were dismissed on September

5, 2025, and defendant was transferred to federal custody.  On October 31, 2025, this Court

ordered defendant detained pending trial.  (Dkt. No 36).

Defendant filed a motion to suppress and motion for an evidentiary hearing on March 30,

2026.  (Dkt. No. 64).  The government opposed both.  (Dkt. No. 70).  The Court held an

evidentiary hearing on June 11, 2026.  At the hearing, the government called Detective Eric

Boulay and Detective Matthew Couture of the New Bedford Police Department as witnesses.

The Court then took the matter under advisement.

4

**II.      Legal Standard**

The Fourth Amendment forbids "unreasonable searches and seizures."  U.S. Const. amend. IV.  As a general rule, the Fourth Amendment requires the government to obtain a warrant based on probable cause before effecting a search or seizure.  *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012).  A warrantless search or seizure is reasonable, however, if it falls within a recognized exception to the warrant requirement.  *See Riley v. California*, 573 U.S. 373, 382 (2014).

The government bears the burden of proving by a preponderance of the evidence that a warrantless stop and search were reasonable under the Fourth Amendment.  *See United States v. Richards*, 2026 WL 1649137, at \*4 (D. Mass. June 8, 2026) (citing *United States v. Gonsalves*, 859 F.3d 95, 103 (1st Cir. 2017); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974)).

**III.     Discussion**

Defendant challenges his initial stop, the scope of the stop, the search of his person, and the search of his vehicle.  The Court will address each in turn.

**A.      The Initial Traffic Stop**

The government contends that the initial traffic stop survives Fourth Amendment scrutiny because the detectives observed defendant violating the Massachusetts Hands-Free Law, Mass. Gen. Laws ch. 90, § 13B(a).

A traffic stop is a seizure under the Fourth Amendment.  *See Brendlin v. California*, 551 U.S. 249, 255 (2007).  To survive constitutional scrutiny, a traffic stop therefore must "not be 'unreasonable' under the circumstances."  *United States v. Pavao*, 134 F.4th 649, 654 (1st Cir. 2025) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)).

5

In the First Circuit, "[t]here [is] not . . . complete clarity as to whether a stop for a traffic violation must be supported by probable cause or reasonable suspicion." *United States v. Potter*, 78 F.4th 486, 488 (1st Cir. 2023) (citing cases).  Yet whatever the requisite level of suspicion, "[a]n officer can stop a car if he sees a driver commit a traffic offense." *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011) (citing *Whren*, 517 U.S. at 810); *see also United States v. Hernandez-Rodriguez*, 150 F.4th 10, 16 n.6 (1st Cir. 2025) ("[T]he observed lane violation on its own constituted adequate grounds for the initial traffic stop . . . .").

In addition, the Massachusetts Hands-Free Law provides as follows:

> No operator of a motor vehicle shall hold a mobile electronic device.  No operator of a motor vehicle shall use a mobile electronic device unless the device is being used in hands-free mode.  No operator of a motor vehicle shall read or view text, images or video displayed on a mobile electronic device; provided, however, that an operator may view a map generated by a navigation system or application on a mobile electronic device that is mounted on or affixed to a vehicle's windshield, dashboard or center console in a manner that does not impede the operation of the motor vehicle. . . .

Mass Gen. Laws ch. 90, § 13B(a).

There is little evidence casting doubt on the detectives' testimony that they observed the defendant holding a phone up to his face while operating the Nissan.  The distance—approximately 45 to 75 feet—was not so far that they would have been unable to see defendant holding an object.  The driver's side window (the window facing the detectives) was down so that any tint or glare on the glass would have minimally impeded their view.  (*See* Mot. to Suppress 9, Dkt. No. 64).  The car was also slowing to a stop, providing the detectives further opportunity to observe the driver.  In addition, their testimony is corroborated by the fact that Detective Couture told defendant at the time that he had been pulled over for using his phone.  Under those circumstances, the Court finds credible that the detectives observed defendant holding a phone while driving.

6

That conduct is a violation of Massachusetts law.  Defendant has submitted an affidavit attesting that he was not texting while driving and that his phone was connected to the vehicle's hands-free system.  (Rivera Aff., Dkt. No. 64-1, at 13).  Even so, he could still have been violating the Hands-Free Law.  Massachusetts prohibits a driver from merely "hold[ing] a mobile electronic device," whether texting or otherwise.  Mass Gen. Laws ch. 90, § 13B(a).  Defendant therefore may have been violating the Hands-Free Law by holding his phone or otherwise physically manipulating it even though he was not texting.  Similarly, the fact that defendant may have been connected to hands-free mode does not mean that he was using his device only in the hands-free mode, which is the only permitted means of use under the law.

Under those circumstances, the detectives had at least probable cause that defendant was violating Massachusetts Hands-Free Law.  The subsequent traffic stop therefore does not offend the Fourth Amendment.

### B.    Scope of the Traffic Stop

Next, the government contends that Officer Courtier was justified in prolonging the traffic stop to investigate defendant's marijuana possession because he had reasonable suspicion that a state-law crime was being committed.[4]

---

[4] In the alternative, the government contends that reasonable suspicion of a federal marijuana offense justifies prolonging the stop and that probable cause of a federal marijuana offense also justifies the subsequent search of defendant's person as a search incident to arrest.  It cites to First Circuit precedent holding that the sight and smell of "crumbs" of marijuana provided the requisite reasonable suspicion of criminal activity to prolong a traffic stop because the possession of any amount of marijuana is a crime under federal law even though less than an ounce of marijuana is not a crime under Rhode Island law.  *United States v. Pavao*, 134 F.4th 649, 657 (1st Cir. 2025) (citing 21 U.S.C. § 844).

In *Commonwealth v. Craan*, 469 Mass. 24 (2014), the Massachusetts Supreme Judicial Court reached a different conclusion.  It reasoned that the decriminalization of marijuana in Massachusetts "accordingly removed police authority to arrest individuals for civil violations" and therefore "also must be read as curtailing police authority to enforce the Federal prohibition of possession of small amounts of marijuana."  *Id.* at 33.  Because state officers did not have the power to enforce federal law, suspicion that a suspect was violating a federal marijuana law did "not provide an independent justification for a warrantless search."  *Id.* at 35.

An officer may "not prolong [a traffic stop] beyond the time reasonably required to complete the mission of the stop unless he has 'the reasonable suspicion ordinarily demanded to justify detaining an individual.'" *Pavao*, 134 F.4th at 654-55 (quoting *Rodriguez*, 575 U.S. 348, 354-55 (2015)). "Reasonable suspicion" is "less than probable cause and more than a naked hunch." *United States v. McGregor*, 650 F.3d 813, 821 (1st Cir. 2011); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989). It is present when "there [is] both a particularized and an objective basis for suspecting the individual stopped of criminal activity." *United States v. Dapolito*, 713 F.3d 141, 148 (1st Cir. 2013). Its presence or absence must be determined on a case-by-case basis, considering the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

Under Massachusetts law, the possession of recreational marijuana is generally a criminal offense subject to certain exceptions. Mass. Gen. Laws ch. 94C § 34. A person may possess one ounce or less of marijuana outside the home and ten ounces or less inside the home without facing civil or criminal sanction. Mass. Gen. Laws ch. 94G, § 7(a)(1) and (2). A person who possesses one to two ounces of marijuana outside the home is subject only to a civil penalty of $100 and forfeiture of the marijuana. Mass. Gen. Laws ch. 94G, § 13(e). At the time of the traffic stop here, the crime of possession of more than two ounces of recreational marijuana outside the home was not subject to an exception. [5]

Detective Couture observed the plastic bag of marijuana in plain view in the backseat

---

The First Circuit in *Pavao* did not address whether an officer may prolong a stop or conduct a search incident to arrest based upon suspicion of a federal crime that the officer has no authority to enforce. This Court need not reach the question of whether *Pavao* is controlling here, however, as it finds that the detectives had reasonable suspicion and later probable cause of a state-law marijuana crime.

[5] Subsequently, on April 19, 2026, Massachusetts increased the amount a person can possess outside the home to two ounces and raised the civil-only penalty to the possession of two to three ounces outside the home. *See An Act Modernizing the Commonwealth's Cannabis Laws*, 2026 Mass. Acts ch. 65.

8

while defendant was searching for the rental agreement.  At that point, as he was waiting for defendant, Detective Couture was not prolonging the stop beyond the time required to complete an ordinary inquiry incident to the observed Hands-Free Law violation.  *See Rodriguez*, 575 U.S. at 355 ("Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." (citation modified)).

That observation provided reasonable suspicion of a crime, namely possession of more than two ounces of marijuana outside the home.  Drawing on his experience with marijuana in quantities both above and below the legal threshold, Detective Couture concluded that the bag contained over two ounces of marijuana.  *See Arvizu*, 534 U.S. at 273 (explaining that reasonable-suspicion determinations "allow[] officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'" (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).  Although reasonable suspicion turns on what the detective knew or had reason to believe at the time, *see United States v. Romain*, 393 F.3d 63, 71 (1st Cir. 2004), the objective reasonableness of his conclusion is corroborated by the fact that the bag was ultimately determined to contain 92 grams (more than three ounces) of marijuana—an amount meaningfully above the two-ounce limit.  (Arrest Report, Dkt. No. 64-1, at 4).  Moreover, while the tinted rear window may have slightly obscured Detective Couture's view of the bag, "reasonable suspicion is not a requirement of absolute certainty." *New Jersey v. T.L.O.*, 469 U.S. 325, 346 (1985).  At the time he first saw the marijuana, Detective Couture had at least

reasonable suspicion of criminal activity and was therefore justified in briefly prolonging the stop to investigate defendant's marijuana possession.

### C.      Search of Defendant's Person

Next, defendant contends that the subsequent search of defendant's person was justified as a search incident to a lawful arrest.[6]

An officer may perform a warrantless arrest if he has probable cause to believe that the offender has committed or is committing a crime. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). That is, "whether at that moment the facts and circumstances within the officer['s] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the individual had committed or was committing an offense." *Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997) (citation modified) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In addition, an officer may search the "arrestee's person and the area 'within his immediate control'" incident to that lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (quoting *Chimel v. California,* 395 U.S. 752, 763 (1969)).

A search incident to arrest may precede the formal arrest as long as (1) probable cause to arrest existed before the search and (2) the arrest follows "quickly on the heels" of the search. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."). Moreover, "probable cause need only exist as to any offense that could be charged under the circumstance[—] . . . [i]t

---

[6] In the alternative, the government contends that the search of his person was justified as a *Terry* protective frisk. Because the Court finds the search was justified as a search incident to arrest, it does not reach the question of whether the search was a legitimate frisk for weapons.

is immaterial that the arrest grounds differed from the ultimate charging decision." *United States v. Bizier*, 111 F.3d 214, 219 (1st Cir. 1997) (finding that probable cause from a prior controlled buy justified a search incident to arrest even though the defendant was formally arrested for drugs found during that search).

Before defendant got out of the vehicle, Detective Couture had probable cause to arrest him for possessing more than two ounces of marijuana outside the home. The detective was able to closely examine the plastic bag of marijuana when defendant showed it to him. He testified that at that point he concluded that it contained between two and a half ounces to a quarter pound of marijuana. Again, the reasonableness of that belief is corroborated by the fact that the bag did contain that amount. Nor does defendant's statement that the bag held "only two ounces . . . that's it" cut against that conclusion. His recitation of the threshold for non-criminal marijuana possession appears to be an attempt to avoid incriminating himself.

In short, the probable cause to arrest defendant for a state-law marijuana crime justified the search incident to arrest. Defendant's formal arrest followed "quickly on the heels" of Detective Couture's initial search of his pocket. *See Rawlings*, 448 U.S. at 111. And it is immaterial that defendant was formally arrested on grounds different from those that justified the search incident to arrest. *See United States v. Bizier*, 111 F.3d at 219.

**D.      Search of Defendant's Vehicle**

Finally, the government contends that the search of the vehicle was permitted under the automobile exception to the warrant requirement. Under that exception, "a warrantless search of an automobile may proceed so long as the authorities have probable cause to believe that contraband is within the particular vehicle." *United States v. Simpkins*, 978 F.3d 1, 6 (1st Cir. 2020).

11

Detective Couture observed defendant place the plastic bag containing more than two ounces of marijuana into the glove compartment.  He also found crack cocaine on defendant's person.  Under the circumstances, there was ample probable cause to believe that the vehicle contained additional marijuana or other illicit substances.  *See DeBisschop v. Town of Longmeadow*, 2021 WL 2535570, at *8 (D. Mass. June 21, 2021) ("[O]bservation of contraband in a vehicle or on the person of an occupant of a vehicle provides probable cause for a complete search for more contraband." (quoting *Commonwealth v. Miller*, 366 Mass. 387, 389 (1974))).

***

In sum, the government has shown that the initial stop, the scope of the stop, the search of defendant's person, and the search of defendant's vehicle fell within exceptions to the warrant requirement.  The Court will therefore deny the motion to suppress.

## IV.    <u>Conclusion</u>

For the foregoing reasons, the motion to suppress of defendant Eliezer Rivera is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  July 16, 2026                    United States District Judge

12